

# Fourth Court of Appeals

### San Antonio, Texas

## OPINION

No. 04-13-00701-CR

Jessica **PINEDA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 5449
Honorable N. Keith Williams, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice
Dissenting Opinion by:  Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 13, 2014

REVERSED AND REMANDED

 Jessica Pineda appeals her conviction for possession of cocaine in an amount of less than

one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2010). Because we hold

that the trial court erred by denying her motion to suppress, we reverse the trial court's judgment

and remand the cause for further proceedings consistent with this opinion.

---

[1] The Honorable N. Keith Williams, presiding judge of the 216th Judicial District Court, Kendall County, Texas, presided over Pineda's plea of guilty and placed her on deferred adjudication. The Honorable Stephen B. Ables, sitting by assignment, heard and denied Pineda's motion to suppress.

## BACKGROUND

Based on an anonymous tip, a Boerne City police officer made an investigatory stop of Pineda's vehicle. After Pineda consented to a search of her vehicle, the officer discovered cocaine. Pineda moved to suppress all the evidence arising from the investigatory stop, arguing that the officer stopped her vehicle in violation of the Fourth Amendment because the officer lacked reasonable suspicion. Pineda appeals the trial court's denial of her motion to suppress.

Pineda filed a pretrial motion to suppress evidence. The trial court held a hearing on the motion, during which it heard the arguments of counsel, but no live testimony. Instead, the facts stated in the officer's complaint were stipulated. The complaint recited the following:

> On Friday April 27, 2012 at approximately 1235 hours, I was dispatched to Toudanines Cleaners located at 1430 South Main in reference to solicitors on the property trying to sell stuff out of the trunk of their vehicle. The caller advised dispatch that the subjects were in a gray 4 door Grand Am with a possible license plate of CNBL621. Dispatch also advised that the caller had asked the solicitors to leave and they were leaving the location heading toward the back of the complex but wanted the solicitors to be checked out.
>
> While en route to Toudanines, I observed a Gray Pontiac Grand Am bearing TX LP #CN8BL621, traveling north bound in the 1300 block of South Main. I safely made a U-turn and began to follow the vehicle that had turned into the shopping center located at 1369 South Main. I activated my emergency lights and the vehicle came to a stop in the parking lot of Jiffy Lube located at 1345 South Main.
>
> I contacted the driver of the vehicle who I later identified as Ryan . . . . As I approached the vehicle, I noticed it was occupied by two other subjects later identified as Jessica Pineda . . . and Dominic. . . . While speaking with Ryan I observed Jessica to be nervous and kept looking down toward the center console and the floor of the car. I asked Ryan if I could search the vehicle and he stated the vehicle belonged to Jessica. I asked Jessica if I could search the vehicle and she stated I could.
>
> I conducted a search of the vehicle. I located a teal in color Doral Cigarette box located in the center console of the vehicle. Inside of the cigarette box was a metal Tecate Bottle cap that had been pinched together. I noticed there was a small baggie enclosed inside

of bottle cap. I pried open the bottle cap and located a small clear 1/2" by 1/2" plastic baggie that contained a white powdery substance in it.

I collected the white baggie and contacted Jessica. I asked Jessica who the metal bottle cap and the clear plastic baggie belonged to. Jessica informed me that it was her. I asked Jessica what the white powder was in the clear plastic baggie. Jessica stated it was cocaine. I informed Jessica she was being placed under arrest for Possession of a Controlled Substance. The substance field tested positive for cocaine.

The State argued that the officer had reasonable suspicion to believe that Pineda had violated a Boerne city ordinance that makes it unlawful for:

[A]ny peddler, solicitor or vendor to engage in the business of selling, displaying, offering for sale of any food, beverages, goods, merchandise or Services of any kind within the City without first obtaining a permit from the City Manager or his duly authorized representative as provided for in the chapter.

Boerne, Tex., Ordinance 2012-12 Mobile Food Vendors, § 15-58 (April 24, 2012). The trial court denied Pineda's motion to suppress. In its written findings of fact and conclusions of law, the court found that "a caller reported to the Boerne Police Dispatch that solicitors were attempting to sell property out of the parking lot of Toudanines Cleaners." The court found that the caller "personally observed" and "gave a description of the suspected wrongdoing." The court found that the officer "initiated a traffic stop to investigate whether [Pineda] was soliciting property out of her vehicle." It concluded that Pineda "was a possible 'Solicitor' as defined in Ordinance 2012-12"; that Pineda "was possibly 'soliciting' property out of her vehicle as defined in Ordinance 21012-12"; and Pineda's "alleged conduct did not fall within a permit exception defined in Ordinance 2012-12." The court concluded that the officer "had enough articulable facts based on the information from the caller and from his own observations to conduct a investigatory stop to determine if the activity of the defendant was related to crime." Following the denial of her motion to suppress, Pineda pled guilty pursuant to a plea bargain and was placed on deferred adjudication community supervision.

### DISCUSSION

Pineda argues the trial court erred by denying her motion to suppress because the arresting officer lacked reasonable suspicion to make an investigatory stop of her vehicle. She argues that the officer lacked reasonable suspicion because 1) the anonymous tip was not supported by sufficient indicia of reliability and 2) the officer lacked specific, articulable facts that Pineda was engaged in criminal activity.

### A. Standard of Review

When we review a trial court's ruling on a motion to suppress, we accord the court's factual findings "almost total deference," provided its determinations are supported by the record. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We view the evidence in the light most favorable to the trial court's ruling and afford its ruling "'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *Id.* (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). "And when reviewing mixed questions of law and fact, courts afford great deference to the trial judge's rulings, provided that those rulings depend upon evaluations of credibility and demeanor." *Id.* "But when credibility and demeanor [are] irrelevant, courts conduct a de novo review." *Id.*

"[T]he question of whether a certain set of historical facts gives rise to reasonable suspicion is reviewed *de novo*." *Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013); *e.g.*, *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) ("The historical facts elicited from Officer Hurley's testimony are not at issue; the issue is whether these uncontroverted facts created a reasonable suspicion such that Officer Hurley was justified in initiating a *Terry* stop."). In this case, the facts were stipulated so the only questions presented to us involve the application of the law to the facts, and therefore, do not turn on credibility and demeanor. *See Garcia v. State*, 296 S.W.3d 180, 183 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "A trial court may, however,

as the trier of fact, draw reasonable deductions and inferences from stipulated facts." *Id.* "While we review the trial court's decision *de novo*, we must allow for reasonable deductions from the stipulation" and defer to the deductions supported by the record. *See id.* at 184.

### B. Reasonable Suspicion

To justify the officer's warrantless stop of Pineda's vehicle, the State was required to prove the officer had reasonable suspicion that the vehicle's occupants were violating the law. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer has reasonable suspicion if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Wade*, 422 S.W.3d at 668. "To support a reasonable suspicion, the articulable facts must show 'that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime.'" *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) (emphasis omitted) (quoting *Meeks v. State*, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983)). This standard is an objective one, and the court will take into account the totality of the circumstances in order to determine whether a reasonable suspicion existed for the stop. *Martinez*, 348 S.W.3d at 923.

### C. Did the totality of the circumstances known to the arresting officer justify an investigatory stop of Pineda's vehicle?

The arresting officer did not personally observe Pineda engage in any unusual or criminal activity. Thus, the validity of the stop rests entirely on whether the anonymous tip relayed to the officer provided him with specific, articulable facts that would justify an investigatory stop.[2]

---

[2] Unless an anonymous tip is supported by sufficient indicia of reliability, it will seldom provide reasonable suspicion for an investigatory stop. *Martinez*, 348 S.W.3d at 923. Because we hold that the content of the anonymous tip was insufficient to give rise to reasonable suspicion, we assume *arguendo* the tip was reliable.

In *Martinez v. State*, the Court of Criminal Appeals determined whether an anonymous tip provided an officer with specific, articulable facts from which he could reasonably suspect the appellant was committing or had recently committed a theft. 348 S.W.3d at 925. The tipster had reported that he saw a male driving a blue Ford pickup truck stop at an intersection and put two bicycles in his truck at night. *Id.* at 922. The officer made an investigative stop of the appellant, who was driving a green Ford truck that looked blue about three-quarters of a mile from the reported intersection. *Id.* The trial court denied the appellant's motion to suppress, and the court of appeals affirmed the denial. *Id.* at 924.

The Court reversed, holding that the stop was not supported by reasonable suspicion because there was a "lack of specific, articulable facts suggesting criminal activity was afoot."[3] *Id.* at 926. The Court reasoned that the anonymous tipster did not report contextual factors that reasonably connected the unusual activity reported by the tipster to a theft, such as witnessing the suspect use bolt cutters to cut a bike lock or stating that the bikes were taken from someone's garage. *Id.* at 925; *Cf. Arguellez v. State*, 409 S.W.3d 657, 663-64 (Tex. Crim. App. 2013) (holding anonymous tipster's report that appellant was taking photographs of people at a public swimming pool did not give rise to reasonable suspicion of criminal activity).

This court followed a similar analysis in *Parks v. State*, 330 S.W.3d 675 (Tex. App.—San Antonio 2010, pet. ref'd). In *Parks*, the detaining officer testified that he observed the appellant and three other men walking behind some stores in a strip mall. *Id.* at 677. He testified the men did not approach or attempt to open any of the building's doors, nor did they alter their walking direction or style in response to the officer's approach. *Id.* The officer observed that the men had blue rags hanging from their pockets. *Id.* Based on his nine years of experience, the officer testified

---

[3] The Court also held that the anonymous tip was not supported by sufficient indicia of reliability. *Martinez*, 348 S.W.3d at 926.

that he knew gang members will fly their colors and he associated the blue rags with gang members. *Id.* The officer made an investigative detention and performed a frisk to secure any weapons on the men. *Id.* at 677-78. The trial court denied Park's motion to suppress. *Id.* at 678.

This court reversed, holding the investigative detention that led to the discovery of the weapon was not supported by reasonable suspicion because "[t]he officer's testimony does not provide articulable facts linking Parks to any criminal activity or a weapon." *Id.* at 683. The court reasoned that the officer "did not testify that any particular gang identified itself with similar blue rags, that such a gang was active in the area, or how he acquired his knowledge about the weapon-carrying propensities of that particular gang." *Id.* In addition, the officer "was never questioned about the basis for his testimony that he associated blue rags with gangs or how he acquired knowledge that 'gang members' carry weapons." *Id.*

*Martinez* and *Parks* stand for the proposition that the facts known to the officer must not merely reflect unusual activity, but unusual activity that is connected to criminal activity. In this case, the only facts known to the officer about Pineda's activities in the parking lot were that the anonymous tipster had witnessed Pineda or her companions attempting to sell "stuff" out of the trunk of her vehicle in a parking lot and that she had left the parking lot in response to the tipster's request. The tipster did not provide any facts suggesting Pineda did not have a permit and the complaint does not reveal that the officer had any independent knowledge of such facts. The State contends the officer could have made a reasonable inference from the tip that Pineda did not have a permit to solicit from the fact that she and her companions did not stay at the parking lot to present it to the officer. We disagree. The tipster did not ask Pineda or her companions if they had a permit and did not ask them to wait for an officer to arrive. Instead, the evidence shows that Pineda and her companions left the parking lot in response to the tipster's request that they do so. This evidence does not support an inference that Pineda lacked a permit.

The Boerne City ordinance criminalizes solicitation only if the solicitors have not obtained a permit from the city. Thus, in order to connect the act of solicitation to criminal activity, the tipster was required to supply some contextual facts showing that Pineda was soliciting *without a permit*. *See Arguellez*, 409 S.W.3d at 663-64; *Martinez*, 348 S.W.3d at 925; *Parks*, 330 S.W.3d at 683. No such facts are found in the complaint.[4] Because the tipster did not supply contextual facts showing that Pineda was soliciting without a permit, we hold that the facts provided by the anonymous tipster failed to provide reasonable suspicion that Pineda was in violation of the ordinance. Thus, the investigative stop of Pineda's vehicle without reasonable suspicion violated Pineda's Fourth Amendment rights as a passenger in her own vehicle. *See Kothe v. State*, 152 S.W.3d 54, 61 (Tex. Crim. App. 2004) (holding that passengers in a vehicle may claim a violation of the Fourth Amendment based on an unlawful investigatory stop).

### D. Did Pineda's consent to a search of her vehicle dissipate the taint of the unlawful investigatory detention?

Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal seizure must be suppressed unless the State shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation. *United States v. Portillo-Aguirre*, 311 F.3d 647, 658 (5th Cir. 2002); *accord Brick v. State*, 738 S.W.2d 676, 681 (Tex. Crim. App. 1987). A person's consent to a search following an illegal seizure may sufficiently dissipate the taint of the illegal seizure to permit the

---

[4] In fact, the complaint does not indicate that either the tipster or the officer suspected that Pineda and her companions were selling property without a permit; the tipster merely asked the police to "check out" Pineda because she had been selling "stuff" in the parking lot. Nor did the trial court find that the officer or the tipster suspected Pineda did not have a permit. But even if they had, the record would still need to contain specific, articulable facts supporting that suspicion. *See Martinez*, 348 S.W.3d at 925 (criticizing the court of appeals for making the "conclusory determination that the unusual activity was related to criminal activity by stating that the officer considered the call to be a report of theft"); *Ford*, 158 S.W.3d at 494 (holding that an officer's conclusory testimony that appellant had followed another car too closely in violation of the Transportation Code was unsupported by specific, articulable facts, and thus unable to support reasonable suspicion appellant committed the traffic offense of following another car too closely).

admission of evidence resulting from the consensual search. *Portillo-Aguirre*, 311 F.3d at 658. To show valid consent dissipating the initial illegality, the State must prove: 1) the consent was given voluntarily, and 2) the consent was an independent act of free will. *Id.* "Voluntariness focuses on coercion, and the second prong considers the causal connection between the 'consent' and the prior constitutional violation." *Id.*

To determine whether Pineda's consent was an independent act of free will, we consider (1) the temporal proximity of the illegal stop and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. *Portillo-Aguirre*, 311 F.3d at 659; *accord Crutsinger v. State*, 206 S.W.3d 607, 610–611 (Tex. Crim. App. 2006). The first factor weighs in Pineda's favor because the officer's complaint suggests that Pineda gave her consent to search soon after the unlawful stop. *See United States v. Chavez-Villarreal*, 3 F.3d 124, 128 (5th Cir. 1993) (weighing the first factor in appellant's favor because "[l]ess than 15 minutes elapsed between the stop and the second search"); *Wolf v. State*, 137 S.W.3d 797, 805 (Tex. App.—Waco 2004, no pet.) (weighing the first factor weighed in appellant's favor because "the patrol-car videotape and the officers' testimony at the suppression hearing indicates that there was a close temporal proximity between the illegal conduct—the extended detention—and the consent."). The second factor also favors Pineda because the record does not reveal any intervening circumstances that might have lessened the taint of the unlawful stop and there is no indication that Pineda felt free to leave at that time. *See Portillo-Aguirre*, 311 F.3d at 659; *Wolf*, 137 S.W.3d at 805. Finally, the third factor also weighs in Pineda's favor because there is no recognized exception to the Fourth Amendment's protections based only on an anonymous tipster's request that the police "check out" a particular person. *Cf. Portillo-Aguirre*, 311 F.3d at 659 (noting the detaining officer routinely made extended detentions to "detect evidence of ordinary criminal wrongdoing" without reasonable suspicion); *Wolf*, 137 S.W.3d at 806 ("Although not flagrant, the purpose of the

misconduct was to illegally detain Wolf until an unsubstantiated hunch could be acted upon."). We hold that Pineda's consent to the search of her vehicle did not dissipate the taint of the officer's Fourth Amendment violation because her consent was not an independent act of her free will.

### E. Was the denial of Pineda's motion to suppress harmful?

The officer's unlawful stop of Pineda violated her Fourth Amendment rights and the cocaine and other evidence arising from that detention should have been suppressed. Because the trial court committed constitutional error by denying Pineda's motion to suppress, we must reverse her conviction unless we determine beyond a reasonable doubt that the error did not contribute to her conviction. *See* TEX. R. APP. P. 44.2(a). We hold the trial court's denial of the motion to suppress was harmful error because it "undoubtedly contributed in some measure to the State's leverage in the plea bargaining process and may well have contributed to [Pineda's] decision to relinquish [her] constitutional rights of trial and confrontation in exchange for a favorable punishment recommendation." *Castleberry v. State*, 100 S.W.3d 400, 404 (Tex. App.—San Antonio 2002, no pet.) (citing *McKenna v. State*, 780 S.W.2d 797 (Tex. Crim. App. 1989)).

### CONCLUSION

We reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

Luz Elena D. Chapa, Justice

Publish