

# NUMBER

# 13-14-00413-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**THE STATE OF TEXAS,**                                                                    **Appellant,**

**v.**

**MARON SMITH,**                                                                    **Appellee.**

### On appeal from the County Court at Law No. 1
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Memorandum Opinion by Justice Longoria**

The State brings this accelerated interlocutory appeal of the trial court's order

granting appellee Maron Smith's ("Maron") motion to suppress marijuana found during a

search of his vehicle. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2013 3d C.S.) (permitting the State to appeal a pretrial order granting a motion to suppress). We affirm.

## I. BACKGROUND[1]

On the night of February 4, 2014, Officer Jason Stover of the Victoria Police Department was patrolling the Queen City neighborhood of Victoria in a marked police unit. At approximately 9:00 p.m., Officer Stover observed an unfamiliar car parked in a parking lot shared between a duplex residence located at 2300 North Louis and several businesses. Officer Stover knew from past experience that one of the residents of the duplex was Karon Smith ("Karon"), who had been present when the police recovered a "substantial amount of marijuana" from a vehicle.

Officer Stover described the duplex as a "known drug location" because he had made "four or five" traffic stops of vehicles coming from that location in the two and a half months prior to arresting Maron. Officer Stover began all of the previous stops because he observed traffic violations. His subsequent searches of those vehicles yielded either marijuana or synthetic marijuana. Officer Stover had observed each of the cars from the previous stops parked in the same area of the parking lot.

On the occasion in question, Officer Stover reasoned that the driver of the parked car was visiting one of the residents of the duplex because most of the businesses that shared the parking lot were closed at the time and because there were no other cars

---

[1] Maron opted not to file a brief to assist us in the disposition of this appeal. In a criminal case, we treat the appellee's failure to file a brief as a confession of error. *State v. Fielder*, 376 S.W.3d 784, 785 (Tex. App.—Waco 2011, no pet.). The confession is not conclusive, and we must make an independent examination of the merits of the claim of error. *Id.*; *Siverand v. State*, 89 S.W.3d 216, 220 (Tex. App.—Corpus Christi 2002, no pet.). Our examination is necessarily limited to the arguments advanced in the trial court because we may not advance arguments on behalf of the parties. *See Fielder*, 376 S.W.3d at 785; *Siverand*, 89 S.W.3d at 220.

parked in that area of the lot.  Officer Stover did not actually witness Maron enter or leave the duplex because the reverse lights on Maron's vehicle activated almost immediately after Officer Stover noticed it.  Officer Stover drove farther down the street, turned around, and followed the vehicle.  Less than a minute later, Maron began to pull over to the side of the road.  Officer Stover did not activate his emergency lights or siren, but he did shine his spotlight onto the front driver's side of Maron's car while Maron was in the process of pulling over.

Officer Stover approached the car, and Maron rolled down the window.  Officer Stover asked to see Maron's identification and asked Maron if he knew why Officer Stover was making contact with him.  Maron replied that he was returning from visiting Karon, his brother, and that he did not know why Officer Stover wanted to speak with him.  Officer Stover ran a check on Maron's license and discovered no outstanding warrants.  He then requested that Maron consent to a search of the car.  Maron consented, and Officer Stover directed him to exit the vehicle and wait behind it.  Maron complied, and Officer Stover's search revealed a small amount of marijuana on the floorboards of the car. Officer Stover placed Maron under arrest.

The State charged Maron with possession of less than two ounces of marijuana, a Class B misdemeanor.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (West, Westlaw through 2013 3d C.S.).  Maron's trial counsel filed a general motion to suppress alleging that Officer Stover's actions violated Maron's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and his statutory rights under article 38.23 of the code of criminal procedure.  Officer Stover was the only witness to testify at the suppression hearing.

3

Maron's counsel cross-examined Officer Stover but called no witnesses on Maron's behalf. The trial judge took the matter under advisement and later granted the motion to suppress by written order. At the State's request, the trial judge filed the following findings of fact and conclusions of law:

**Findings of Fact**

1. [On] February 4, 2014 at around 9:00p.m. Victoria Police Officer Jason Stover (hereinafter Officer Stover) stopped a tan 1986 Oldsmobile bearing TXLP#829-SXK at 1000 E. Lorna Vista.

2. Officer Stover was conducting "rolling surveillance" in the area in a marked Victoria Police Department vehicle.

3. Officer Stover observed the 1986 Oldsmobile leave 2300 N. Louis.

4. Officer Stover followed the 1986 Oldsmobile to 1000 E. Lorna Vista where the Defendant pulled over in front of his house.

5. Officer Stover claim[s] that he had reasonable suspicion to detain the Defendant for illegal drug possession based on his training and experience and four or five prior stops of vehicles leaving the alleged drug house in the preceding two months.

   a. Officer Stover could only specifically remember one of those stops which did not result in illegal drug possession.

   b. Officer Stover did not observe the Defendant commit any traffic violations.

   c. Officer Stover did not observe the Defendant walk to or from 2300 N. Louis.

   d. Officer Stover did not know how long the 1986 Oldsmobile had been parked at the location.

   e. Officer Stover did not know the address or owner of the house.

**Conclusions of Law**

1. "Reasonable suspicion" for a lawful temporary detention exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. U.S.C.A. Const. Amend. 4.

2. An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).

3. A reasonable-suspicion determination is made by considering the totality of the circumstances. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

4. Mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis. *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

5. Mere presence in a high-crime area cannot serve as the sole basis for a Terry stop. *Gurrola v. State,* 877 S.W.2d 300 ([Tex. Crim. App.]1994).

6. Officer Stover did not have reasonable suspicion to stop the vehicle, therefore his search of the vehicle violated the Fourth Amendment of the U.S. Constitution and Article 1, Section 9 of the Texas Constitution.

7. In accordance with Article 38.23 of the Texas Code of Criminal Procedure, the evidence of Marijuana is inadmissible.

The State appealed, and raised two issues: (1) Officer Stover had reasonable suspicion to temporarily detain Maron; and (2) Maron consented to the search of his vehicle.[2]

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to suppress for abuse of discretion using a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). We give almost total deference to the trial judge's determination of historical facts and of mixed questions of law and fact that rely on credibility determinations if they are supported by the record. *Id.* We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *Wade v.*

---

[2] The State listed its discussion of the standard of review as its first issue. As we discuss further below, we agree that the proper standard of review regarding whether the detention was supported by reasonable suspicion is *de novo.*

5

*State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013). We review de novo the trial court's application of law to a particular set of facts. *Id.* at 667. We will uphold the trial judge's ruling if it is correct on any theory of law reasonably supported by the record. *Id.* The defendant bears the initial burden of producing evidence to rebut the presumption of proper police conduct. *Ford*, 158 S.W.3d at 492. The defendant satisfies this burden by showing that the search or seizure occurred without a warrant, shifting the burden to the State to show either the existence of a warrant or that the search or seizure was reasonable. *Id.*

Texas courts recognize three distinct categories of police-citizen interactions: consensual encounters; investigative detentions; and arrests. *Johnson v. State*, 414 S.W.3d 184, 191 (Tex. Crim. App. 2013). A consensual encounter between police and a citizen does not implicate Fourth Amendment protections. *Id.*; *see Florida v. Bostick*, 501 U.S. 429, 434 (1991) (observing that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions"). However, a detention is a seizure under the Fourth Amendment and must be supported by reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Reasonable suspicion existed if the officer possessed "specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* The facts in the officer's possession must add up to more than a mere inarticulate hunch, suspicion, or good-faith belief of criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). This is an objective standard that looks to the totality of the circumstances and disregards the subjective intent of the detaining officer. *Wade*, 422 S.W.3d at 668.

6

### III. WAS THE SEIZURE SUPPORTED BY REASONABLE SUSPICION?

The State stipulated that Maron was not detained pursuant to a warrant, shifting the burden to the State to show reasonable suspicion. *See Ford*, 158 S.W.3d at 492. The State argued that reasonable suspicion arose from the totality of the following circumstances: (1) in the past two and a half months, Officer Stover had personally performed four to five traffic stops of vehicles coming from the duplex, all of which yielded marijuana; (2) Officer Stover observed that Maron's car was parked in the same general area of the parking lot as the cars in the previous stops; (3) Officer Stover knew that one of the residents of the duplex was Karon, who had been present at the scene of an earlier raid when police seized a "substantial amount" of marijuana; (4) Maron was nervous enough at the sight of the police vehicle to pull over to the side of the road even though Officer Stover did not activate his emergency lights or siren; and (5) Maron appeared nervous during the initial interaction.

Based on the totality of the objective circumstances available to the officer at the time, we conclude that the trial court did not abuse its discretion by granting Maron's motion to suppress because he had no reasonable suspicion to detain Maron.[3] While having performed "four or five" traffic stops of vehicles coming from a particular location that yielded marijuana may be enough to support a surmise or "mere suspicion" that the driver of a vehicle coming from the same location is carrying drugs, Officer Stover did not testify that he observed any activity that would allow him to infer that the driver of Maron's

---

[3] The State takes issue with the trial court's finding that Officer Stover "stop[ped] the vehicle" but does not contest that the Officer Stover detained Maron once they began speaking. We agree that Officer Stover made no showing of authority to require Maron to stop, but this does not affect our analysis because both parties agree that Officer Stover nevertheless seized Maron before Maron gave consent to the search. *See Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013) (reiterating the rule that appellate courts must uphold the trial court's ruling on a motion to suppress if it is correct on any theory of law applicable to the case).

vehicle was involved in any illicit activity. Officer Stover observed Maron's vehicle parked near Karon's residence and observed that the vehicle was unfamiliar from his patrols of the area, but these are not facts giving rise to reasonable suspicion of illegal activity. Officer Stover did not know the length of time that Maron had been inside the duplex, which resident of the duplex he was visiting, or how long Maron had been at that location. *Cf. Jenkins v. State*, No. 05-05-00608-CR, 2006 WL 234389, at *3 (Tex. App.—Dallas Feb. 1, 2006, no pet.) (mem. op., not designated for publication) (holding that police had reasonable suspicion to stop the defendant when, in the thirty minutes before the stop of the defendant, they observed approximately twenty other people drive up the apartment, make contact with a person and be directed by that person to a particular apartment, remain there for less than five minutes, and then leave, and appellant followed the same pattern). The State also argues that Maron was nervous enough to pull over to the side of the road without a signal from Officer Stover and that he appeared nervous during Officer Stover's initial questions. The Texas Court of Criminal Appeals has held that "nervous or evasive behavior is a relevant factor" in establishing reasonable suspicion, but that nervousness "is not particularly probative." *Wade*, 422 S.W.3d at 671. In these circumstances, especially with the lack of any other immediate information from which he could infer that Maron was involved in criminal activity, the trial court could have fairly concluded that Maron's behavior, combined with the remainder of the objective circumstances, were not sufficient to raise reasonable suspicion. *See id.*

In sum, we conclude that the foregoing facts do not amount to more than a surmise or suspicion that Maron was carrying illegal drugs. *See Crain*, 315 S.W.3d at 52. We

hold that the trial court did not abuse its discretion by granting Maron's motion to suppress on this ground. The State's first issue is overruled.

## IV. WAS MARON'S CONSENT TO SEARCH VALID?

The State asserts by its second issue that Maron voluntarily consented to the search of his car.[4]

### A. Applicable Law

Voluntary consent to search operates as one of the few exceptions to the constitutional rule that a warrantless search is per se unreasonable. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). Both the United States Supreme Court and the Texas Court of Criminal Appeals have reiterated that consent must be voluntary and may "not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). The validity of consent is a question of fact. *Id.* The State bears the burden to prove by clear and convincing evidence that the police did not obtain the consent through duress or coercion. *Monge v. State*, 315 S.W.3d 35, 40 (Tex. Crim. App. 2010).

The "fruit of the poisonous tree" doctrine generally precludes the use of evidence obtained directly or indirectly from an illegal seizure. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *Monge*, 315 S.W.3d at 40. Evidence that is sufficiently attenuated from the unlawful seizure is admissible because it is not considered to have been obtained through the seizure. *Monge*, 315 S.W.3d at 40. Consent following an illegal seizure may dissipate the taint of the illegality if (1) the consent was given

---

[4] The State argued several times to the trial court judge that Maron's consent was free and voluntary, but did not phrase its argument in the language of "attenuation of taint" or address the relevant factors. *See Pineda v. State*, 444 S.W.3d 136, 144 (Tex. App.—San Antonio 2014, pet. ref'd). We assume without deciding that the State properly preserved this issue in the trial court.

9

voluntarily and (2) the consent was an independent act of free will. *Pineda v. State*, 444 S.W.3d 136, 144 (Tex. App.—San Antonio 2014, pet. ref'd); *Wolf v. State*, 137 S.W.3d 797, 805 (Tex. App.—Waco 2004, no pet.). The State bears the burden to show that the evidence is sufficiently attenuated from the unlawful seizure.

### B. Discussion

We address the second prong first because it is dispositive. To determine whether Maron's consent was an independent act of free will, we consider three factors: (1) the temporal proximity of the illegal seizure and the consent; (2) the presence of other intervening circumstances attenuating the taint of the illegality; and (3) the purpose and flagrancy of the initial misconduct. *Pineda*, 444 S.W.3d at 144. The Texas Court of Criminal Appeals has explained that:

> When police find and seize physical evidence shortly after an illegal stop, in the absence of the discovery of an outstanding arrest warrant in between, that physical evidence should ordinarily be suppressed, even if the police misconduct is not highly purposeful or flagrantly abusive of Fourth Amendment rights. Under this scenario, temporal proximity is the paramount factor.

*State v. Mazuca*, 375 S.W.3d 294, 306 (Tex. Crim. App. 2012).

The first factor weighs in Maron's favor because he gave consent shortly after the illegal seizure; Maron's verbal consent is audible at approximately three and a half minutes into the dashcam recording. *See United States v. Portillo-Aguirre*, 311 F.3d 647, 659 (5th Cir. 2002) (weighing the first factor in the defendant's favor because the consent came less than five minutes from the beginning of the illegally-prolonged seizure); *Wolf*, 137 S.W.3d at 805 (weighing the first factor in the defendant's favor because a similar amount of time had elapsed). The second factor also weighs in Maron's favor because there are no intervening circumstances that lessened the taint of the unlawful seizure and

10

no indication that Maron felt free to leave. *See Pineda*, 44 S.W.3d at 144. The third factor weighs against Maron because there is nothing to indicate that the seizure, although illegal, was flagrant police misconduct. Based on the short amount of time that elapsed between the beginning of the seizure and Maron's consent, we conclude that Maron's consent was not sufficient to attenuate the taint of the illegal seizure. *See Mazuca*, 375 S.W.3d at 306. The trial court did not err in granting Maron's motion to suppress on this ground. We overrule appellant's second issue.

## V. CONCLUSION

We affirm the order of the trial court.


NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of March, 2015.

11