# NO. 12-15-00186-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LONNIE LYNN JOHNSON,* *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Lonnie Lynn Johnson appeals his convictions for felon in possession of a firearm, felon in possession of body armor, and impersonating a public servant. Pursuant to a plea bargain, Appellant pleaded guilty to the three offenses, and the State recommended thirty years of imprisonment for each offense. The trial court found Appellant guilty and followed the State's punishment recommendation. In two issues, Appellant argues the trial court erred in denying his motion to suppress evidence. We affirm in part and reverse and remand in part.

### BACKGROUND

Appellant was charged in a three count indictment with the offenses of felon in possession of a firearm, felon in possession of body armor, and impersonating a public servant. The indictment included an enhancement paragraph. Appellant pleaded "not guilty" to the offenses charged and "true" to the enhancement paragraph. He also filed a motion to suppress certain items found in his vehicle during a search and the oral statements he made after the items were found but before his formal arrest.

The evidence at the suppression hearing showed that around dark on January 12, 2014, Texas Game Warden Rob Sadowski was dispatched by the Anderson County Sheriff's Office to

the Gus Engeling Wildlife Management Area[1] to assist a person on the property whose vehicle was stuck in the sand. Upon their arrival, Warden Sadowski and his partner, Danny Kessel, located Appellant and his wife. Sadowski requested that they produce their driver's licenses. A computer check of Appellant's license revealed he was a convicted felon, and Appellant admitted that he did not have an entry permit for the property. Sadowski testified that, after obtaining Appellant's consent, he searched Appellant's vehicle, and found a firearm, body armor, and certain items of police tactical equipment in a duffle bag located in the vehicle's trunk. According to Sadowski, Appellant told him that he worked as an undercover peace officer for the Tarrant County Sheriff's Office and the items found were related to his work. However, Sadowski could not verify Appellant's association with that agency, and Appellant was arrested.

The trial court denied the motion to suppress. Thereafter, Appellant entered into a plea agreement for thirty years of imprisonment for each of the charged offenses to run concurrently. The trial court sentenced Appellant accordingly, and this appeal followed.

## STANDARD OF REVIEW

A trial court's denial of a motion to suppress is reviewed for an abuse of discretion under a bifurcated standard of review. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to a trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Accordingly, the trial judge is entitled to believe or disbelieve all or any part of a witness's testimony. *Ross*, 32 S.W.3d at 855. When, as in this case, a trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings that are supported by the record. *Id.*

Second, we perform a de novo review of a trial court's application of the law to the facts that do not turn on credibility and demeanor. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any applicable theory of law. *Valtierra*, 310 S.W.3d

---

[1] This area is state-owned and regulated by the Texas Parks and Wildlife Department. The public can enter the area with a state-issued permit.

at 447-48.  The winning side is afforded the strongest legitimate view of the evidence as well as all reasonable inferences that may be drawn from it.  *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

**SUPPRESSION OF EVIDENCE FROM THE VEHICLE SEARCH**

In his first issue, Appellant argues that the trial court abused its discretion in denying his motion to suppress the evidence obtained from the search of his vehicle.  In particular, Appellant contends he did not consent to the search of his vehicle.  Alternatively, in the event he is believed to have consented to the search, he argues that his consent was obtained during a detention that was not supported by reasonable suspicion.

**Applicable Law**

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures.  U.S. CONST. amend. IV. As a result, searches made without a warrant are generally per se unreasonable.  *See Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967).  When a warrantless search is conducted, the state bears the burden to show that the search was constitutionally permissible.  *See Mendoza v. State*, 30 S.W.3d 528, 531 (Tex. App.–San Antonio 2000, no pet.); *see also Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002).  To meet that burden, the state must establish that the search falls within one of the narrow exceptions to the warrant requirement.  *Mendoza*, 30 S.W.3d at 531.  Consent is one of those well-established exceptions.  *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).

Law enforcement and citizens engage in three distinct types of interactions:  (1) consensual encounters, (2) investigatory detentions, and (3) arrests.  *State v. Woodard*, 341 S.W.3d 404, 410-11 (Tex. Crim. App. 2011).  Consensual law enforcement-citizen encounters do not implicate Fourth Amendment protections.  *Id*. at 411.  A citizen may terminate a consensual encounter at any time.  *Crain v.* State, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).  Investigative detentions and arrests are Fourth Amendment seizures and therefore implicate Fourth Amendment protections.  *Johnson v. State*, 414 S.W.3d 184, 191 (Tex. Crim. App. 2013).

Investigative detentions must be supported by a reasonable suspicion of criminal activity.  *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).  A law enforcement officer has reasonable suspicion if he has specific, articulable facts that, when combined with the rational

inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaging in criminal activity. *Id*. This is an objective standard; the subjective intent of the officer is irrelevant. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

Although the individual circumstances may seem innocent enough in isolation, the applicable standard considers the totality of the circumstances. *Wade*, 422 S.W.3d at 668. When the officer's information supports more than "an inarticulate hunch or intuition . . . that something of an apparently criminal nature is brewing," the standard for reasonable suspicion is satisfied. *See id*. Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law and fact that is reviewed de novo on appeal. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013).

**Consent to Search**

Appellant first argues that he did not consent to the search of his vehicle and that Warden Sadowski's testimony to the contrary is not credible.

At the suppression hearing, Sadowski testified that he asked Appellant for permission to search his vehicle and Appellant told him to "go ahead." Sadowski testified further that when he opened the vehicle's trunk, he saw a duffle bag inside. He asked permission to search the bag, and Appellant again told him to "go ahead." Appellant and his wife disputed Warden Sadowski's version of the events. They each testified that Sadowski did not request permission to search Appellant's vehicle and "ordered" Appellant to open the vehicle's trunk. Appellant testified that Sadowski did not request permission to search the duffle bag. The trial court made implied findings that Warden Sadowski's testimony was credible and Appellant's and his wife's testimony was not.

Appellant concedes that great deference is given to the trial court's ruling concerning the credibility and demeanor of witnesses. He argues, however, that, considering the nature of the items located in his vehicle, it "strains belief" that he would initiate contact with law enforcement and then consent to the search.[2] Therefore, he suggests that we should disregard the trial court's implied credibility findings.

---

[2] Appellant testified that he called for a "wrecker service." He did not state that he sought assistance from law enforcement.

Reconciliation of conflicting evidence based on who is credible is a matter uniquely reserved for the trial court. *Ervin v. State*, 333 S.W.3d 187, 203 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd). In this case, the trial court assessed the credibility of the witnesses and reconciled the conflicts in favor of the State. We are not authorized to disregard its credibility findings. *See Valtierra*, 310 S.W.3d at 447; *Ross*, 32 S.W.3d at 855.

**Reasonable Suspicion**

Alternatively, Appellant argues that the consent was obtained in violation of his Fourth Amendment right against unreasonable search and seizure. He contends Warden Sadowski asked for consent to search the vehicle after Appellant was issued a warning citation for entering the wildlife area without a permit. He insists that Sadowski did not have reasonable suspicion to detain him after the warning was issued and therefore his consent to the search was invalid.

We first note Sadowski's testimony that he requested consent to search Appellant's vehicle while his partner was in the process of issuing a warning to Appellant for not having a permit to be on the property. Based on this testimony, the trial court reasonably could have determined, and the record supports an implied finding, that Sadowski obtained Appellant's consent to the search within the time necessary to issue the warning citation. *See Kelly v. State*, 331 S.W.3d 541, 550-51 (Tex. App.–Houston [14th Dist.] 2011, pet. ref'd) (holding consent to search valid when traffic investigation is not unduly prolonged to obtain consent).

Additionally, we disagree that Sadowski did not have reasonable suspicion that Appellant was, had been, or was going to engage in criminal activity when the request to search the vehicle was made. Sadowski testified that he had been a game warden for slightly more than three years. Based on his experience, he stated that illegal hunting occurs "regularly" on the wildlife management area property and that it is "not unusual" for people to be fishing on the property without a permit. After Sadowski and his partner located Appellant, Sadowski asked for his driver's license. When he "ran" the license, he learned that Appellant was a convicted felon. Appellant's vehicle, a "newer model Mercedes Benz," was stuck in a river bottom area that was "well off the paved road" through the wildlife area and down a dead end dirt road. Sadowski described the location as "very, very hard to reach." Yet Appellant explained that he and his wife were simply "driving through" on their way back to the Fort Worth and Dallas area from Lufkin. Appellant also stated that he had done the same thing a few days earlier in another park, which, to Sadowski, established "a pattern for driving in out-of-reach places[.]" And finally,

Sadowski described Appellant's behavior as "overly friendly," which he believed was a sign that Appellant was nervous.

These circumstances, when considered individually, may seem innocent. *See Wade*, 422 S.W.3d at 668. But when considered objectively and in their totality, they support more than an inarticulate hunch or suspicion that Appellant was, had been, or soon would be engaging in criminal activity. *See id*. Therefore, Sadowski had reasonable suspicion to conduct an investigative detention of Appellant.

The trial court did not abuse its discretion by denying Appellant's motion to suppress the items found in Appellant's vehicle. Appellant's first issue is overruled.

## SUPPRESSION OF ORAL STATEMENTS

In his second issue, Appellant argues the trial court erred in denying his motion to suppress the oral statements he made after he was handcuffed following the search of his vehicle.

**Applicable Law**

In order for a statement taken from a person in custody to be admissible in court, law enforcement officers must advise the person that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that the person has a right to the presence of an attorney, either retained or appointed, before the statement is taken. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). The need to administer *Miranda* warnings arises only when a person has been subjected to custodial interrogation. *Id*. Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the state in a criminal proceeding during its case-in-chief. *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). Additionally, the Texas Code of Criminal Procedure provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things, the statement was electronically recorded. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(1) (West Supp. 2016). The definition of "custody" for purposes of Article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Herrera*, 241 S.W.3d at 526.

A person is in "custody" for *Miranda* purposes only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Id*. at 525. The "reasonable person" standard presupposes an

6

innocent person. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S. Ct. 2382, 2388, 115 L. Ed. 2d 389 (1991). The initial determination of custody depends on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U. S. 318, 323, 114 S. Ct. 1526, 1529, 128 L. Ed. 2d 293 (1994). The ultimate inquiry is simply whether there was a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L. Ed. 2d 714 (1977)).

At least four general situations may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest, the officer's knowledge of probable cause is manifested to the suspect, and the officer does not tell the suspect that he is free to leave. *Id*. at 255. There is no bright line test providing that mere handcuffing is always the equivalent of an arrest. *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002).

"Interrogation" refers to any words or actions by a law enforcement officer (other than those normally attendant to arrest and custody) that the officer should have known were reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U. S. 291, 301-02, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980).

**The Arguments**

Appellant argues that his oral statements after he was handcuffed were made while he was in custody and were the product of custodial interrogation. It is undisputed that Appellant was not administered *Miranda* warnings before or during the time he was being questioned and that his statements were not electronically recorded. Therefore, he urges that the statements should have been suppressed.

The State counters that there was no need for *Miranda* warnings or electronic recording of the statements because Appellant made them during an investigative detention. The State correctly points out that a person held for an investigative detention is not in custody. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3149, 82 L. Ed. 2d 317 (1984); *Dowthitt*, 931 S.W.2d at 255 ("*Stansbury* indicates that the restriction upon freedom of

movement must amount to the degree associated with an arrest as opposed to an investigative detention."). Therefore, *Miranda* and article 38.22 do not apply to an investigative detention. *Dowthitt*, 931 S.W.2d at 255.

The State explains that Appellant was not in custody because Warden Sadowski was not questioning Appellant to build a case but rather to determine if a crime had been committed. According to the State, Appellant was handcuffed during the investigative detention for safety reasons based on the time of day, the location, and Warden Sadowski's knowledge that Appellant was a convicted felon. The State also argues that, in an attempt to talk his way out of an arrest, Appellant voluntarily made the statements he now seeks to suppress.

## "Volunteered" Information

Under both the Fifth Amendment and article 38.22, voluntary statements not made in response to interrogation by law enforcement officers are admissible. *See Miranda*, 384 U. S. at 478, 86 S. Ct. at 1602 ("Volunteered statements of any kind are not barred by the Fifth Amendment . . . ."); *Dowthitt*, 931 S.W.2d at 263 ("*Miranda* and Article 38.22 apply only to custodial interrogation.").

Warden Sadowski testified that he immediately handcuffed Appellant after he found the items in the duffle bag in the trunk of Appellant's vehicle. He testified further that as he was placing Appellant in handcuffs, Appellant volunteered that he was an undercover peace officer with the Tarrant County Sheriff's Office. After Appellant was handcuffed, Sadowski questioned him in an attempt to verify whether he was associated with that agency. Appellant denied making any statements as he was being handcuffed. He claimed that any oral statements about his association with the Tarrant County Sheriff's Office occurred only after he was handcuffed and in response to Sadowski's questioning. He also testified that he identified himself as a "covert confidential informant," not an undercover peace officer.

When Appellant first mentioned his association with the Tarrant County Sheriff's Office and what he said about it were matters of fact for the trial court to determine based on its evaluation of the credibility of the witnesses. *See Ross*, 32 S.W.3d at 855. As such, the record supports an implied finding that, as Warden Sadowski was in the process of handcuffing Appellant but before asking him any questions, Appellant made an unsolicited statement that he was an undercover peace officer with the Tarrant County Sheriff's Office. Because, according to the trial court's implied finding, Appellant "volunteered" this information, *Miranda* and article

8

38.22 do not apply. *See **Miranda***, 384 U. S. at 478, 86 S. Ct. at 1602; ***Dowthitt***, 931 S.W.2d at 263. Therefore, the trial court did not abuse its discretion in denying Appellant's motion to suppress this statement.

## Statements in Response to Questioning

Whether the trial court should have suppressed the oral statements Appellant made in response to Sadowski's questioning after he was handcuffed turns on whether the statements were made during custodial interrogation.

The record shows that Warden Sadowski immediately handcuffed Appellant after locating a firearm, body armor, and certain items of police tactical equipment in the trunk of Appellant's vehicle. Appellant testified that Sadowski told him as he was being handcuffed that he was "under arrest." But Sadowski testified that he was not "formally arrested" for over an hour after being handcuffed. Both Sadowski and his partner remained at the scene until Appellant was formally arrested and transported to jail. It is undisputed that Appellant was being physically deprived of his freedom and was not free to leave after being handcuffed.

Sadowski did not tell Appellant why he was being handcuffed. He did not communicate to Appellant that he was not under arrest, that he would be released after questioning, or that he was being placed in handcuffs for safety reasons only. Nor did Sadowski remove the handcuffs after completing his questioning. *See **Bartlett v. State***, 249 S.W.3d 658, 670-71 (Tex. App.—Austin 2008, pet. ref'd) (defendant not in custody where officer removed him from area in handcuffs for safety reasons, advised him that he was not going to arrest him and would return him to original area after questioning, removed handcuffs after taking defendant to open area for questioning, and returned defendant to former location after questioning).

The record shows further that after handcuffing Appellant, Sadowski's questioning related solely to Appellant's claimed association with the Tarrant County Sheriff's Office and his use of the firearm, body armor, and tactical equipment in that capacity. The indictment alleges in Count II that Appellant was impersonating a peace officer with intent to induce Rob Sadowski to submit to the pretended authority of the defendant "by claiming to be working for the Tarrant County Sheriff's Office." Appellant's answers to Warden Sadowski's questioning after being handcuffed formed the basis of that charge. Through the denial of Appellant's motion to suppress, the State would have been able to rely, in part, on Appellant's answers to prove the charge alleged in Count II.

9

Based on the totality of the circumstances, a reasonable person in Appellant's position that night would have believed, once he was handcuffed, that his freedom of movement was restrained to the degree associated with a formal arrest. In addition, Sadowski's questions were "reasonably likely to elicit an incriminating response" from Appellant. *See **Innis***, 446 U. S. at 301-02, 100 S. Ct. at 1689-90. Therefore, we hold that, after Appellant was handcuffed, the statements he made in response to Sadowski's questions were the product of custodial interrogation. Because the statements were made before Appellant was given his ***Miranda*** warnings and were not electronically recorded as required by article 38.22, the trial court abused its discretion by denying Appellant's motion to suppress as to these statements. But our analysis does not end here.

**Harm Analysis**

The erroneous denial of a motion to suppress a statement taken in violation of ***Miranda*** is constitutional error. ***Jones v. State***, 119 S.W.3d 766, 776-77 (Tex. Crim. App. 2003). Therefore, reversal is required unless we can determine, beyond a reasonable doubt, that the failure to suppress Appellant's statements did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a) (standard for determining harm for constitutional error).

When a defendant has pleaded guilty after obtaining a pretrial ruling denying his motion to suppress evidence that is later determined to be erroneous, the appellate court's determination of harm focuses on whether the error contributed to his decision to plead guilty. *See **Holmes v. State***, 323 S.W.3d 163, 174 (Tex. Crim. App. 2009) (op. on reh'g). The inquiry is not whether sufficient independent evidence existed to support the guilty plea. ***Anthony v. State***, 954 S.W.2d 132, 136 (Tex. App.–San Antonio 1997, no pet.), *overruled on other grounds by **Gonzales v. State***, 67 S.W.3d 910 (Tex. Crim. App. 2002).

In this case, the hearing on Appellant's motion to suppress was held on two days—October 3, 2014, and March 2, 2015. Appellant's counsel withdrew after the first day of the hearing, and Appellant proceeded without counsel on the second day. Immediately after the hearing concluded on March 2, which was after the jury had been selected, Appellant withdrew his waiver of the right to counsel. The trial court signed an order appointing counsel on March 18, 2015. Thereafter, no additional documents were filed on Appellant's behalf pertaining to the anticipated trial. On June 29, 2015, Appellant entered into a plea bargain in which he agreed to plead guilty to all charges in exchange for the State's recommendation of a

thirty year sentence for each offense, to run concurrently. An unindicted case also was "taken into consideration." Appellant's guilty plea in accordance with this agreement resulted in his convictions and punishment.

Each of the charged offenses was a third degree felony. *See* TEX. PENAL CODE ANN. §§ 37.11(b) (impersonating a public servant), 46.04(c) (felon in possession of a firearm), 46.041(c) (felon in possession of body armor) (West 2011). The punishment range for a third degree felony is imprisonment for not less than two years or more than ten years and a $10,000 fine. *Id*. § 12.34 (West 2011). However, the written plea agreement and the trial court's admonishments at the plea hearing show that each of three offenses was enhanced to a first degree felony because of Appellant's prior felony convictions. As a result, the punishment range at trial for each offense would have been imprisonment for life, or for not less than five years or more than ninety-nine years, and a $10,000 fine. *Id*. § 12.32 (West 2011).

The State's sentencing recommendation was significantly more favorable than the punishment range Appellant would face if he proceeded to trial. The denial of Appellant's motion to suppress "undoubtedly contributed in some measure to the State's leverage in the plea bargaining process and may well have contributed to [Appellant's] decision to relinquish his constitutional rights of trial and confrontation in exchange for a favorable punishment recommendation." *See, e.g.*, ***Pineda v. State***, 444 S.W.3d 136, 144-45 (Tex. App.–San Antonio 2014, pet. ref'd) (quoting ***Castleberry v. State***, 100 S.W.3d 400, 404 (Tex. App.–San Antonio 2002, no pet.)); *see also* ***McKenna v. State***, 780 S.W.2d 797, 799-800 (Tex. Crim. App. 1989). Therefore, we hold that the trial court's constitutional error was harmful. Accordingly, we sustain Appellant's second issue in part.[3]

## CONCLUSION

The trial court did not abuse its discretion in denying Appellant's motion to suppress the items found in the trunk of his vehicle and his unsolicited statement about his association with the Tarrant County Sheriff's Office. Accordingly, we ***affirm*** the trial court's judgments of conviction for felon in possession of a firearm and for felon in possession of body armor.

---

[3] The failure to suppress statements obtained in violation of article 38.22 is nonconstitutional error. *See* ***Nonn v. State***, 117 S.W.3d 874, 880-81 (Tex. Crim. App. 2003). Because we have held that the trial court's constitutional error was harmful, we need not address whether its nonconstitutional error was harmful. *See* TEX. R. APP. P. 47.1.

However, the trial court abused its discretion in denying the motion to suppress the oral statements Appellant made to Warden Sadowski that were the product of custodial interrogation. Therefore, we *reverse* the trial court's judgment of conviction for impersonating a public servant, and *remand* that case to the trial court for further proceedings consistent with this opinion.

GREG NEELEY
Justice

Opinion delivered October 12, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 12, 2016**

**NO. 12-15-00186-CR**

**LONNIE LYNN JOHNSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Anderson County, Texas (Tr.Ct.No. 31675)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below in the conviction for **impersonating a public servant,** it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court. It is further ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed** as to the convictions for **felon in possession of a firearm** and **felon in possession of body armor**; and that this decision be certified to the court below for observance.

Greg Neeley.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*