ACCEPTED
05-14-01399-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/30/2015 12:25:44 PM
LISA MATZ
CLERK

# IN THE COURT OF APPEALS
## FOR THE FIFTH DISTRICT
## DALLAS, TEXAS

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS

3/30/2015 12:25:44 PM

LISA MATZ
Clerk

| | | |
|---|---|---|
| **CHRISTOPHER LEE COLE** | § | |
| **Appellant** | § | |
| | § | |
| **VS.** | § | **APPEAL NUMBERS** |
| | § | **05-14-01398-CR** |
| | § | **05-14-01399-CR** |
| **STATE OF TEXAS** | § | **(ORAL ARGUMENT REQUESTED)** |
| **Appellee** | § | |

**On Appeal from Criminal District Court Number Six
of Dallas County, Texas
No. F-13-53515
No. F-13-53516**

# Appellant's Brief

**RONALD L. GORANSON
2828 Routh Street
Suite 675
Dallas, Texas  75201
(214) 651-1122
(214) 871-0620 (fax)
State Bar No. 08195000**

**ATTORNEY FOR APPELLANT
COLE**

# Identity of Parties and Counsel

| | |
|---|---|
| Appellant | Christopher Lee Cole |
| Appellant's Attorney | Ronald L. Goranson<br>2828 Routh Street, Suite 675<br>Dallas, Texas 75201<br>(214) 651.1122<br>(214) 871-0620 (fax)<br>SBOT No. 08195000 |
| Appellant's Trial Attorney | Mr. Howard Blackmon<br>SBOT NO. 02395800<br>4144 North Central Expressway, Suite 250<br>Dallas, Texas 75204<br>Phone: (214) 821-1919 |
| State of Texas | Susan Hawk, District Attorney, Dallas County, Texas |
| Appellate Attorney | Ms. Lori Ordiway<br>SBOT No. 12327300<br>Assistant District Attorney<br>133 N. RIVERFRONT BLVD, 10TH Floor<br>Dallas, Texas 75207<br>Tel. (214) 653-3644 |
| Trial Attorneys | By Mr. Blake Reyna<br>SBOT NO. 24051246<br>Assistant District Attorney<br>Frank Crowley Courts Building<br>133 North Riverfront<br>Dallas, Texas 75207<br>Phone: (214) 653-3600<br><br>Mr. Dimitri Anagnostis<br>SBOT NO. 24066767<br>Assistant District Attorney<br>Frank Crowley Courts Building<br>133 North Riverfront<br>Dallas, Texas 75207<br>Phone: (214) 653 - 3600 |

# TABLE OF CONTENTS

STATEMENT OF THE CASE ................................................1

ISSUES PRESENTED .......................................................3

STATEMENT OF THE FACTS ............................................3

SUMMARY OF THE ARGUMENT ...........................................6

POINT OF ERROR 1

    THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE
    JURY AS REQUIRED BY ART. 38.23 OF THE RULES OF
    CRIMINAL PROCEDURE THAT IF THE JURY BELIEVED OR
    HAD A REASONABLE DOUBT THAT THE EVIDENCE SEIZED
    WAS OBTAINED IN VIOLATION OF THE CONSTITUTION OR
    LAWS OF THE STATE OF TEXAS OR UNITED STATES, THE
    JURY SHOULD DISREGARD THAT EVIDENCE.................. 7

POINT OF ERROR 2

    THE EVIDENCE WAS INSUFFICIENT TO PROVE THE
    ENHANCING PARAGRAPH IN EACH INDICTMENT...........17

CONCLUSION ...........................................................20

CERTIFICATE OF SERVICE ...............................................21

CERTIFICATE OF COMPLIANCE ........................................21

# INDEX OF AUTHORITIES

## CASES:

Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994) .................................................... 8

Almanza v. State, 686 S.W.2d 157, 174 (Tex.Crim.App.1985) .......................................... 7, 8, 16

Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim.App.1986) .................................................. 8, 16

Bell v. State, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985) ......................................................... 9

Booth v. State, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984) ...................................................... 9

Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App.2010) (citing Jackson v. Virginia, 443

    U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) ............................................... 17

Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App.2007) .................................................... 17

Flowers v. State, 220 S.W.3d 919, 921 (Tex.Crim.App.2007) .................................................... 17

Ford v. State, 444 S.W.3d 171 (Tex.App.-San Antonio 2014) .................................................... 15

Garza v. State, 126 S.W. 3d 79, 85 (Tex. Crim. App. 2004) ....................................................... 10

Gentile v. State, 848 S.W.2d 359, 360 (Tex.App.-Austin 1993, no writ) .................................... 18

Hamal v. State, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) ..................................................... 9

Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing Jackson, 443 U.S. at 318-19, 99

    S.Ct. 2781) ................................................................................................................. 17

Hutch v. State, 922 S.W.2d 166, 171 (Tex.Crim.App.1996) ......................................................... 8

Kothe v. State, 152 S.W.3d 54, 61 (Tex.Crim.App. 2004) .......................................................... 15

Madden v. State, 242 S.W.3d 504, 514 (Tex. Crim. App. 2007) ................................................... 9

Oursbourn v. State, 259 S.W.3d 159, 177 (Tex.Crim.App.2008) .................................................. 9

Payne v. State, 194 S.W.3d 689, 698 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd) ........... 10

Pineda v. State, 444 S.W.3d 136, 143 (Tex.App.-San Antonio 2014) ........................................ 15

<u>Robinson v. State</u>, 377 S.W.3d 712, 719-720 (Tex. Crim. App. 2012)................................. 10, 14

<u>Warner v. State</u>, 245 S.W.3d 458, 461 (Tex.Crim.App.2008)......................................... 7

<u>Watson v. State</u>, 693 S.W.2d 938, 941 (Tex. Crim. App. 1985) ................................. 10

## STATUTES/CONSTITUTIONS:

Art. 38.23 of the Code of Criminal Procedure............................................. 3, 6, 7, 8, 16

Rule 25.2 of the Texas Rules of Appellate Procedure ................................................... 2

Art. 44.02 of the Texas Code of Criminal Procedure ................................................ 2

Tex. Transp. Code § 547.302......................................................................... 11

Tex. Transp. Code § 547.322......................................................................... 11

| | | |
|---|---|---|
| CODY TYLER JONES | § | |
|     Appellant | § | |
| | § | |
| VS. | § | APPEAL NUMBERS |
| | § | 05-14-01398-CR |
| | § | 05-14-01399-CR |
| STATE OF TEXAS | § | (Oral Argument Requested) |
|     Appellee | § | |

On Appeal from Criminal District Court Number Six
of Dallas County, Texas
No. F-13-53515
No. F-13-53516

# Appellant's Brief

## Statement of the Case:

Appellant Christopher Lee Cole was charged with two possession of controlled substance with intent to deliver cases. The cases were tried together. Any errors will apply to both cases. Appellant requests that the cases be considered together.

Appellant was charged by an indictment in F-13-53515 (Appeal #05-14-01398-CR) with the offense of possession with intent to deliver more than 4 grams but less than 200 grams of the controlled substance cocaine. (R 13/53515 at p.6)

(hereinafter R515, p. #). The indictment also alleged one prior felony conviction for enhancement of the punishment.

In F-13-53516 (Appeal #05-14-01399-CR) he was charged with the offense of possession with intent to deliver more than 1 gram but less than 4 grams of the controlled substance methamphetamine. This indictment also included an enhancing paragraph alleging the same prior conviction to enhance the punishment. (See R 13/53516 at p. 6)(hereinafter R516, p. #).

The appellant pled not guilty and a jury trial on both guilt/innocence and punishment was held on September 29, 2014 to October 1, 2014. On October 1, 2014 the jury found Appellant guilty on both charges, found the enhancing paragraphs to be true and assessed a 15 year sentence in F-13-53515 (R 515, p. 63, SF. Vol 4, p. 58) and a 7 year sentence in F-13-53516. (R 516, p. 58, SF- Vol 4, p. 58). The sentences were ordered to run concurrently. (SF – Vol 4, p. 61, R515, p. 63, R516, p. 58).

Written Notice of Appeal was filed on October 13, 2014. (R515, p. 67, R. 516, p. 68). This jurisdiction of this Court is invoked pursuant to Art. 44.02 of the Texas Code of Criminal Procedure and Rule 25.2 of the Texas Rules of Appellate Procedure. The cause is properly before this Court of Appeals.

## Issues Presented:

1. The trial court erred in failing to instruct the jury as required by Art. 38.23 of the Rules of Criminal Procedure that if the jury believed or had a reasonable doubt that the evidence seized was obtained in violation of the Constitution or laws of the State of Texas or United States, the jury should disregard that evidence.

2. The evidence was insufficient to prove the enhancing paragraph in each indictment.

## Statement of Facts:

### Evidence for the State on Guilt or Innocence

Dallas Police Officer David Roach testified that on March 12, 2013 he was parked in his patrol car with officer Mills on Bexar Street in South Dallas. (SF Vol 3, p. 22). He noticed a vehicle pass that had a defective license plate light. (SF Vol 3, p. 23) The officers conducted a traffic stop. Officer Roach approached the passenger side of the vehicle and observed a person he later identified as Appellant light up a cigarette. (SF Vol 3, p. 25). Officer Roach asked Appellant if the cigarette was a "blunt." The officer stated that a "blunt" was "a common term for marijuana cigarette." (SF Vol 3, p. 26) Appellant answered "Yeah, I was just about to hand it to you." (SF Vol 3, p. 26) the officer said "Go ahead" and Appellant handed the officer the cigarette. The officer testified that the cigarette

appeared to contain marijuana. (SF Vol 3, p. 26). The officer then asked the Appellant to exit the vehicle where he was handcuffed and arrested for possessing marijuana. (SF Vol 3, p. 26).

Officer Roach then stated that he asked the Appellant if there was anything he needed to know about before the officer searched Appellant. Appellant responded that there was a pill bottle with "some s\*\*t in it." The officer searched the Appellant and found a clear pill bottle inside the right front pocket of Appellant's jacket. (SF Vol 3, p. 29). Inside the pill bottle were several baggies that contained a crystal like substance and a white powder. (SF Vol 3, p. 29). He testified that there were smaller empty bags also found, and that the size of the bags and number of bags indicated the drugs were intended for resale. (SF Vol 3, pp. 32-33). Field tests indicated the substances found were cocaine and methamphetamine. (SF Vol 3, pp. 34-35). On cross-examination the officer testified that the traffic stop was recorded, the recording was uploaded into the Dallas Police system, but that it could not be found. (SF Vol 3, pp. 46-47) On Redirect, he denied that he intentionally dumped the recording. (SF Vol 3, p 60)

Kelly Conrad testified that she was a chemist for the Southwestern Institute of Forensic Sciences. (SF Vol 3, p. 60). She identified the baggies that were seized from the Appellant. State's Exhibit # 5 contained 7.4 grams of cocaine, including

adulterants. (SF Vol 3, pp. 69-70). State's Exhibit #6 contained 2.24 grams of methamphetamine. (SF Vol 3, p. 70).

Officer Tyler Mills testified that he was the driver of the police car with Officer Roach. (SF Vol 3, p. 76) He stated that they noticed a car with a defective license plate light and stopped it for a traffic offense. (SF Vol 3, p. 76) He stated that he approached the driver and Officer Roach approached the passenger side. (SF Vol 3, p. 76). He stated he heard Officer Roach ask the passenger if that was a "blunt" in the passenger's hand and the passenger (identified as Appellant Cole) answered "Yeah, I was just about to give it to you." (SF Vol 3, p. 77). After the Appellant was arrested, he did another search and found a large hefty bag containing a green leafy substance he identified as marijuana in the Appellant's front waist area (SF Vol 4, pp. 78-80). He testified that the number of baggies found indicated an intent to sell the various drugs. (SF Vol 4, p. 80).

Irving Police Department Narcotics Detective Stephen Junker testified that the different types of packaging and the different types of drugs indicated an intent to sell. (SF Vol 4, pp. 95-96, 97-98, 100, 101, 103-104, 105).

**Evidence for the State on Punishment**

Dallas County Deputy Sheriff Fernando Hernandez stated that he took the Appellant's fingerprints. (SF Vol 4, p. 12). He compared the prints to conviction records for two felonies. State's Exhibit #9 was for a conviction in F-05-58330 for

unlawful delivery of cocaine resulting in a 6-year sentence. (SF Vol 4, p. 17). This was the conviction alleged in the enhancing paragraph of each indictment. (R 515, p. 6; R516, p. 6). The state also introduced conviction records showing a concurrent six year sentence for possession with intent to deliver cocaine in F-07-52879 (State's Exhibit #10, SF Vol 4, p. 18); a 10 month state jail felony sentence for delivery of marijuana, (State's Exhibit 11, SF Vol. 4, pp. 19-20); a concurrent 10 month state jail felony conviction for delivery of marijuana (State's Exhibit 12, SF vol4, p 20); a180 day state jail sentence for unauthorized use of a motor vehicle (State's Exhibit 13, SF Vol 4, p. 20) and a 45 day county jail sentence for evading arrest (State's Exhibit 14, SF Vol 4, p. 21). The officer used the fingerprint records of all the records of conviction (except Exhibit 10) to compare with the Appellant's fingerprints, but he was never asked if they matched.

**Evidence for The Defense on Punishment**

Catherine Cole testified that she was the Appellant's mother. (SF Vol 4, p. 25). She testified about his background and the difficulties he had while growing up. (SF Vol 4, pp. 26-30)

# Summary of the Arguments:

1. Appellant contends that the record shows that there was an issue of fact about the constitutionality of the seizure of evidence that required the jury instruction required by Art. 38.23 of the Code of Criminal Procedure. The

Appellant properly requested such an instruction. Appellant was harmed by the trial court's failure to give the instruction.

2.     Although the State called a fingerprint examiner to compare the fingerprints of the Appellant with those in a judgment of conviction, the State never asked the witness if the known fingerprints of the Appellant matched those in the records of the alleged enhancing conviction. Other than the name, there was no other identifying information submitted to connect the Appellant to the prior conviction.

# Point of Error Number 1

The trial court erred in failing to instruct the jury as required by Art. 38.23 of the Rules of Criminal Procedure that if the jury believed or had a reasonable doubt that the evidence seized was obtained in violation of the Constitution or laws of the State of Texas or United States, the jury should disregard that evidence.

## Standard of Review

In analyzing a jury-charge issue, the court's first duty is to decide if error exists. See Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). If error is found then the court considers whether an objection to the charge was made. Warner v. State, 245 S.W.3d 458, 461 (Tex.Crim.App.2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal."). The degree of harm necessary for reversal depends upon whether the error was preserved. Hutch v.

State, 922 S.W.2d 166, 171 (Tex.Crim.App.1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); Almanza, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim.App.1986).

## Argument

Article 38.23 provides that evidence obtained in violation of the Constitution or laws of the United States or Texas may not be admitted in a criminal case. TEX.CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."). The statute also provides that a jury instruction should be submitted if a fact issue is raised about whether such a violation has occurred. Id. ("In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."). The jury instruction requires the jury to disregard evidence that it finds was obtained in violation of the United States or Texas

Constitution or laws. *Id.* To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct. Oursbourn v. State, 259 S.W.3d 159, 177 (Tex.Crim.App.2008).

The Texas Court of Criminal Appeals has held that, to get an instruction on illegally obtained evidence, there must be a fact issue that the defense has affirmatively contested; in such a circumstance, cross-examination is insufficient to qualify as an affirmative contest. Madden v. State, 242 S.W.3d 504, 514 (Tex. Crim. App. 2007); see Hamal v. State, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Although the court has not explicitly held that the defense must introduce the evidence to affirmatively contest that issue, logically, most circumstances will require the defense to introduce the evidence. However, in every other type of jury instruction--defenses, affirmative defenses, and party liability--there is no requirement that the instruction's proponent be the party that introduces the evidence. If the record contains sufficient evidence raising a certain issue, the instruction on that issue should be given, regardless of which party tendered the evidence. See, e.g, Bell v. State, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985); Booth v. State, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984) ("it makes no difference whether such evidence or testimony was produced by the prosecution or

the accused"); see also <u>Watson v. State</u>, 693 S.W.2d 938, 941 (Tex. Crim. App. 1985); <u>Payne v. State</u>, 194 S.W.3d 689, 698 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd). When a disputed, material issue of fact is successfully raised, the terms of the statute are mandatory, and the jury must be instructed accordingly. <u>Madden</u>, *supra*, at 510. Evidence to justify an Article 38.23(a) instruction can derive from any source, no matter whether strong, weak, contradicted, unimpeached, or unbelievable. <u>Robinson v. State</u>, 377 S.W.3d 712, 719-720 (Tex. Crim. App. 2012); <u>Garza v. State</u>, 126 S.W. 3d 79, 85 (Tex. Crim. App. 2004). The evidence must raise a "factual dispute about how the evidence was obtained." [<u>Robinson</u>, *supra* at 719; <u>Garza</u>, *supra* at 85.

## Facts Showing Error

Appellant filed a pretrial Motion to Suppress. (R515, p. 35, R 516, p. 43). The motion alleged that the evidence seized was "obtained as a result of an unlawful stop, detention, search and seizure ..." Id. Prior to the selection of the jury there was a hearing on Appellant's Motion to Suppress. (SF Vol 2, pp 4-20). Essentially Officer Roach stated that the vehicle in which Appellant was riding was stopped because there was a defective tail light on the rear license plate. (SF Vol 2, p. 6): "We observed the vehicle to not have an operating rear license-plate

light during nighttime hours when the headlights were on."). [1] Appellant's trial counsel questioned the officer about a recording made of the stop that was no longer available:

Q. Is there a camera equipment or dash cam in the vehicle?

A. Yes, there was.

Q. When does that start filming; when the emergency lights come on?

A. That's correct, yes.

Q. Your vehicle would be following the vehicle in which Mr. Cole was riding in, and how close contact did you come? You know, what was the distance between the cars?

A. Initially, when we got behind it and stopped the vehicle -- we were parked, it was moving, so we had to catch up initially. When the traffic stop was occurring, maybe 10, 15 feet behind the rear bumper.

Q. It would have been captured on dash cam whether or not the light was burned out?

A. Yes, it was captured.

Q. We don't have dash-cam video?

---

[1] Tex. Transp. Code § 547.302: "(a) A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle:
(1)      at nighttime; and
(2)      when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead."

Tex. Transp. Code § 547.322 : "(f)   A taillamp or a separate lamp shall be constructed and mounted to emit a white light that:
(1)      illuminates the rear license plate; and
(2)      makes the plate clearly legible at a distance of 50 feet from the rear.
(g)      A taillamp, including a separate lamp used to illuminate a rear license plate, must emit a light when a headlamp or auxiliary driving lamp is lighted."

A. I have seen the video. I am told the video is no longer in our system. I'm not sure where it's at.

Q. So for trial there is no dash cam?

A. That's correct.

Q. For this hearing, there is no dash cam that could provide critical evidence whether or not the light was off?
A. Yes. (SF Vol 2, pp. 14-15)

During the trial before the jury, the testimony was essentially identical to the testimony at the pre-trial hearing on the motion to suppress. Officer Roach stated that the vehicle was stopped because of a defective license plate light. (SF Vol 3, p. 23). He was cross-examined about the failure to preserve the recording of the traffic stop:

Q. When the -- I'll call them "emergency lights."

A. Okay.

Q. -- are activated, that activates the dash cam?

A. Yes, it does.

Q. So we should have a video of the rear of the car that Mr. Cole was riding in?

A. Yes.

Q. But we don't?

A. Once the emergency lights were activated, it records the traffic stop just like he said. Once that's done and the arrest is made and all that stuff is done, we take the vehicle down back to the station and download it and fill out a piece of paper to save that video evidence for trial.

Me and Mills both filled out the paperwork and submitted it through the proper channels to get it saved. Why there is no video here right now, I have no idea. I know that following the arrest we checked to make sure it was downloaded. It was downloaded. The file was there. But in the course of time between that day and today, something has happened to it. I couldn't tell you what, but I know I did attempt to bring the video to court.

Q. So Mr. Cole asked for a jury trial. You are saying that the dash-cam video was downloaded. All of a sudden, unbeknownst to you, it mysteriously disappears, which would corroborate whether or not the rear light was out?

A. Correct. The way it works, once it's downloaded -- every video Dallas Police Department captures on dash cam is downloaded automatically. As soon as you pull under the sally-port area at the station, it downloads it wirelessly.

Once it's downloaded, you have to check and put in a piece of paperwork to show which video you would like saved with evidence. That keeps the City of Dallas from having hundreds and hundreds and thousands of videos of someone blocking off a highway during an accident where there is nothing there. No evidentiary value.

What it does is that system automatically deletes any video that isn't marked to be saved for evidence for a certain amount of time. I think it's 90 days. After 90 days, it's deleted.

Mills and I completed the paperwork to have it saved. We checked to see it was downloaded. The video was there. I don't know this -- what's happened since then, if it's been automatically deleted by a system error, if the person I gave the paperwork to save the video didn't click the right box or if the paperwork got lost. I don't know what happened, but I took the steps to bring the video to you.

Q. So you don't know what happened?

A. I have no idea. (SF Vol 3, pp. 47-49)

Officer Mills also testified on direct that the vehicle was stopped for the traffic violation of a defective license plate light. (SF Vol 3, p. 76). He was cross-examined about the dash cam and the missing recording. (SF Vol. 3, pp. 81-82).

Appellant's trial counsel made a timely and proper request for the 38.23 jury instruction. (SF Vol 3, p. 112). During his argument to the jury on guilt or innocence Appellant's trial counsel tried to argue the significance of the missing recording:

> Okay. Now, you heard about this burned-out light on the car. Okay. Of course, the dash cam, I mean, how much time they spend on that, trying to excuse that away. There should be a video showing the light was burned out, showing they had a legitimate reason. You know. What are we really talking about here? You know. They're talking about this traffic infraction. I went over these other traffic infractions. The 47 in a 45, pulling over the solid white line. This nonsense, oh, a burned-out license-plate light. You know, people get a pass on that every day, everywhere, except if you are driving down Bexar Street in South Dallas. (SF Vol 3, p. 119)

Evidence to justify an Article 38.23(a) instruction can derive from any source, no matter whether strong, weak, contradicted, unimpeached, or unbelievable. Robinson v. State, supra, at 719-720. Here the evidence was raised by the cross-examination of the two officers. If there was no defective license-plate light, there was no legal reason to stop the car. Both officers stated that the only reason the vehicle was stopped was because of the defective license plate light. (SF Vol 3, pp. 50, 81) Appellant Cole was a passenger in the car. He had

standing to protest the alleged traffic stop. [2] The officers clearly stated that they

recorded the top and were close enough for the video to show if the license plate

light was defective. Officer Roach went to great lengths to explain the absence of

the recording. It clearly was a fact question within the jury's purview to determine

if the stop was "legal."

The San Antonio Court of Appeals affirmed a murder conviction in Ford v.

State, 444 S.W.3d 171 (Tex.App.-San Antonio 2014). The opinion stated:

> At trial, Deborah Edwards testified that a power cord used to charge a
> cordless electric drill was also missing from her daughter's condominium.
> Specifically, Deborah Edwards testified:
>
>> She had one and she bought her father one just like it. And
>> when we were putting things up, the cord was missing from hers. It
>> was in her office. . . . She bought them at the same time.
>
>> The State then moved to introduce into evidence the identical
>> charging cord from the drill Edwards had purchased for her father.
>> Ford objected that the cord was not relevant and invited speculation.
>> The State responded that the proffered " exhibit is an exact copy of the
>> charging cord that is missing from the deceased's cordless charger that
>> was in the office where she was found murdered by strangulation."
>> The trial court overruled Ford's objection and admitted the cord into
>> evidence.

The opinion continued:

---

[2] *See* Kothe v. State, 152 S.W.3d 54, 61 (Tex.Crim.App. 2004) (holding that passengers in a vehicle may claim a violation of the Fourth Amendment based on an unlawful investigatory stop). See also Pineda v. State, 444 S.W.3d 136, 143 (Tex.App.-San Antonio 2014)( The investigative stop of Pineda's vehicle without reasonable suspicion violated Pineda's Fourth Amendment rights as a passenger.)

The State elicited testimony that the cord was missing from the crime scene, presented an identical cord into evidence, and argued that the missing cord could have in fact been the murder weapon. Such "speculation" is a proper use of circumstantial evidence and a question of fact for the jury to resolve.

In the present case Appellant presented circumstantial evidence that an important recording was missing. The recording could have shown that there was no defective license plate light, thus no valid reason to stop the vehicle. With no reason to stop, all the evidence found on the Appellant would have been seized in violation of the Texas and United States Constitutions. This was a question that Article 38.23 requires the jury to answer, and if the jury answers favorably to the accused, the jury may not consider the evidence for any purpose. The jury should have been properly charged on the issue. Appellant properly objected to the trial court's failure to give a 38.23 jury instruction. Pursuant to Almanza, *supra*, if there is a proper request, then any harm, regardless of degree, is sufficient to require reversal. Arline v. State, *supra*, at 351. If the jury does not consider the drugs seized, there would be no conviction. Appellant was harmed by the failure of the trial court to instruct the jury as required by Art. 38.23, Tex. Code Crim. Pro.

Appellant requests that the convictions be reversed and the cause remanded for a new trial.

# Point of Error Number 2

The evidence was insufficient to prove the enhancing paragraph in each indictment.

## Standard of Review

In evaluating legal sufficiency the Court of Appeals reviews all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App.2010) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The appellate court examine legal sufficiency under the direction of the Brooks opinion, giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing Jackson, 443 U.S. at 318-19, 99 S.Ct. 2781); Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App.2007).

## Argument

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists and (2) the defendant is linked to that conviction. Flowers v. State, 220 S.W.3d 919, 921 (Tex.Crim.App.2007). The Flowers court noted that Texas law does not require

"that the fact of a prior conviction be proven in a specific manner," and "any type

of evidence, documentary or testimonial, may suffice." *Id.* In its decision, the

Texas Court of Criminal Appeals likened the process of proving up a prior

conviction to evidentiary pieces to a jigsaw puzzle and left the ultimate decision of

whether these "pieces fit together sufficiently to complete the puzzle" with the trier

of fact under the totality of the evidence. Id. at 923 In Gentile v. State, 848 S.W.2d

359, 360 (Tex.App.-Austin 1993, no writ) a certified copy of driving record,

standing alone, was held insufficient. Appellant contends that the evidence in this

case was the same as that in Gentile - certified records of a judgment.

## Facts Showing Error

Dallas County Deputy Sheriff Fernando Hernandez stated that he took the

Appellant's fingerprints. (SF Vol 4, p. 12). He compared the prints to conviction

records for two felonies. State's Exhibit #9 was for a conviction in F-05-58330 for

unlawful delivery of cocaine resulting in a 6-year sentence. (SF Vol 4, p. 17).

This was supposed to be the conviction alleged in the enhancing paragraph of each

indictment. (R 515, p. 6; R516, p. 6). The state also introduced conviction records

showing a concurrent six year sentence for possession with intent to deliver

cocaine in F-07-52879 (State's Exhibit #10, SF Vol 4, p. 18); a 10 month state jail

felony sentence for delivery of marijuana, (State's Exhibit 11, SF Vol. 4, pp. 19-

20); a concurrent 10 month state jail felony conviction for delivery of marijuana

(State's Exhibit 12, SF vol4, p 20); a180 day state jail sentence for unauthorized use of a motor vehicle (State's Exhibit 13, SF Vol 4, p. 20) and a 45 day county jail sentence for evading arrest (State's Exhibit 14, SF Vol 4, p. 21). The officer used the fingerprint records of all the records of conviction (except Exhibit 10) to compare with the Appellant's fingerprints, but he was never asked if they matched.

Because there were no finger print records for State's Exhibit #10, the State sought to prove up that conviction by asking Deputy Sheriff Hernandez if the handwriting on State's Exhibit #9 was similar to the defendant's signature on documents located in State's Exhibit 10. He stated the signatures were "similar." (SF Vol 4, p. 24).

The evidence connecting the Appellant to State's Exhibit # 9 is solely his name – Christopher Lee Cole. Appellant contends that the lack of testimony that the fingerprints taken from him (State's Exhibit #8) matched the fingerprints on State's Exhibit # 9 and the lack of any other identifying information other than his name is insufficient as a matter of law to sustain the finding by the jury that he was one and the same person previously convicted. There was some testimony trying to connect Appellant's signature, but that testimony was limited to connecting State's Exhibit 9 to State's Exhibit 10 (two previous convictions), not to any exhibit in this present prosecution. There was no testimony about the Appellant's photograph, driver's license, or social security number connecting Appellant to the

person named in State's Exhibit 9. Basically, the state's case fails because the prosecutor failed to ask the one critical question – Do the fingerprints in State's Exhibit 8 match the fingerprints in State's Exhibit 9?

Since the Appellant did not receive the minimum sentence in either case, he has been harmed and as such the case should be remanded for a new jury trial on punishment.

## Conclusion:

For the above error Appellant requests that the convictions be reversed and remanded as to Ground of Error 1 and for a new punishment hearing on Ground of Error 2.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/Ronald L. Goranson
**RONALD L. GORANSON**
2828 Routh Street, Suite 675
Dallas, Texas 75201
(214) 651.1122 / (214) 871-0420 (fax)
State Bar No. 08195000
ATTORNEY FOR APPELLANT

</div>

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and correct copy of the Appellant's Brief was delivered to Ms. Lori Ordiway, Assistant District Attorney, Appellant Division, Dallas County District Attorney's Office, 133 N. Riverfront Blvd, 10th floor, Dallas, Texas, 75207 this March 30, 2015.

/s/Ronald L. Goranson
**RONALD L. GORANSON**


## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), Texas Rules of Appellate Procedure, counsel for Appellant certifies that there are #### words in this document pursuant to the inclusions and exclusions required by Rule 9.4(i)(1), Texas Rules of Appellate Procedure.

/s/Ronald L. Goranson
**RONALD L. GORANSON**